**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------X
HERIBERTO GUADALUPE,

                              *Plaintiff*,

                                                          **MEMORANDUM**
                                                      **AND ORDER**

                  -against-                                25-CV-00718 (HG) (JMW)

CHASE AUTO FINANCE CORP., and
DEZBA ASSET RECOVERY,
                                   *Defendants*.
-----------------------------------------------X

**A P P E A R A N C E S:**

        Vlad Hirnyk
        Sergei Lemberg
        **Lemberg & Associates, LLC**
        1100 Summer Street, 3rd Floor
        Stamford, CT 06905
        *Attorneys for Plaintiff*

        Christopher B. Turcotte
        **Turcotte Law, P.C.**
        641 Lexington Avenue, 15th Floor
        New York, NY 10022
        *Attorney for Defendants*

**WICKS,** Magistrate Judge:

Plaintiff Heriberto Guadalupe ("Plaintiff") commenced this action on February 7, 2025

against Defendants Chase Auto Finance Corp. ("Chase")[1] and DEZBA Asset Recovery

("DEZBA")(collectively, "Defendants") claiming unlawful and wrongful repossession of

Plaintiff's 2018 Honda HR-V ("Vehicle") in violation of the Fair Debt Collection Practices Act,

---

[1] Defendant JPMorgan Chase Bank, N.A. was incorrectly sued herein as Chase Auto Finance Corp. As
such, any reference made to Chase refers to JPMorgan Chase.

1

15 U.S.C. § 1692, *et seq.*, ("FDCPA") and Article 9 of the United Commercial Code, New York General Business Law § 349.  Plaintiff also asserts claims for conversion, trespass, and breach of peace. (*See generally* ECF No. 1.) On December 30, 2025, the Hon. Hector Gonzalez determined that Defendants established a prima facie case for civil contempt against non-party Sol Enterprise Transport ("SET") for SET's failure to comply with a subpoena *duces tecum* (ECF No. 30-1) served by Chase on July 23, 2025. (Electronic Order dated December 30, 2025.)

The parties are before the Court on Chase's request for a hearing to determine appropriate sanctions following Judge Gonzalez's finding SET in civil contempt. (ECF No. 35; Electronic Order, 02/02/2026.) For reasons stated below, the Court determines that a daily monetary fine of $500 per day beginning on February 26, 2026 be imposed upon SET, in addition to reimbursing Chase for its reasonable attorneys' fees and costs incurred in connection with filing the motion for contempt.

## **BACKGROUND**

In July 2024, Plaintiff entered into an automobile finance agreement with Chase to purchase the Vehicle. (ECF No. 1 at ¶ 12.) According to Plaintiff, Chase released its security interest in the Vehicle on July 29, 2024 after filing a "Notice of Recorded Lien" stating that its security interest in the Vehicle was "satisfied." (*Id.* at ¶¶ 13, 15.) Notwithstanding, Plaintiff avers that Chase issued an Order to Repossess on January 18, 2025 whereby Chase directed Defendant DEZBA to repossess the Vehicle from Plaintiff's home. (*Id.* at ¶¶ 16-17.) Shortly thereafter, on January 21, 2025, Plaintiff maintains that Defendants unlawfully repossessed the Vehicle "without legal authority," "without a court order," and "without providing the required notices under state and federal law." (*Id.* at ¶¶ 18-19.) Despite Plaintiff's objection to the repossession,

2

Defendant DEZBA towed the Vehicle without Plaintiff's personal possessions inside. (*See id.* at ¶¶ 20-23.)

According to Plaintiff, Defendants' conduct caused him "financial loss, emotional distress, and inconvenience, including but not limited to loss of employment opportunities, transportation difficulties, and reputational harm." (*Id.* at ¶ 25.) Consequently, Plaintiff asserts causes of action for violations of the FDCPA as to Defendant DEZBA's asset recovery, New York's Uniform Commercial Code for conducting the repossession with a "breach of the peace," New York's General Business Law for engaging in unlawful deceptive practices and acts, and for conversion, trespass to chattels, and breach of peace. (*Id.* at pp. 4-9.) Plaintiff seeks damages of (i) $39,600.00 in lost wages; (ii) statutory damages of $1,000.00; (iii) emotional distress damages of $10,000.00; and (iv) reasonable attorney fees and costs as a result of Defendants' conduct. (*See* ECF No. 28, Ex. B; *see also* ECF No. 43-14.)

At the time of repossession, Plaintiff was employed by SET as an independent contractor. (ECF No. 43, Turcotte Decl. at ¶ 3.) Following Plaintiff's identification of SET as his employer on July 17, 2025 in connection with Plaintiff's discovery responses, Chase personally served SET's principal Christofer Solano ("Solano") with Chase's subpoena *duces tecum* on July 23, 2025 at SET's address—1172 Nugent Avenue, Bay Shore, NY 11706—calling for the production of certain employment and payroll records by August 6, 2025. (*Id.* at ¶ 4; *see* ECF No. 30-2; ECF No. 43-12 and 43-13 (setting forth the address of SET's Bay Shore location)). A week later, on July 30, 2025, Solano emailed counsel indicating that he received the subpoena and sought clarification about its scope and what he was required to produce. (*See* ECF No. 43, Turcotte Decl. at ¶ 5; *see also* ECF No. 43-5.) Despite counsel for Chase's response and

3

clarification with Solano, *see* ECF No 43-6, 43-7, Solano never responded and failed to comply with the subpoena by the August 6 deadline. (*See* ECF No. 30 at p. 2.)

The August 6 deadline passed and on August 8, 2025 counsel for Chase emailed Solano reminding Solano of the missed deadline, inquiring into the status of the subpoena response, and inviting Solano to contact counsel if he had any questions. (*See* ECF No. 43, Turcotte Decl. at ¶ 7; *see also* ECF No. 43-7.) Then again on August 18, 2025, counsel for Chase emailed Solano reminding Solano that as per his July 30, 2025 email he indicated he was in possession of responsive documents, advising him that he should contact counsel for Chase to advise on an intended response timeline, and forewarning that absent a response Chase would seek Court intervention. (*See* ECF No. 43, Turcotte Decl. at ¶ 8; *see also* ECF No. 43-7.) Solano did not respond to the August 8 and August 18 emails. (*See* ECF No. 43, Turcotte Decl. at ¶ 8.)

Consequently, Chase filed a motion on August 25, 2025, seeking to hold SET in civil contempt of court for failing to comply with the subpoena *duces tecum*, that an order be entered directing SET to provide true and complete responses to the subpoena by a date certain, and award Chase costs and expenses incurred in filing the motion. (*See* ECF No. 20; *see also* ECF No. 43, Turcotte Decl. at ¶ 9.) Then-presiding Magistrate Judge Arlene R. Lindsay denied the motion without prejudice and leave to renew "if necessary." (Electronic Order dated October 8, 2025.)

Chase renewed its motion to compel compliance with the subpoena *duces tecum* on November 17, 2025. (ECF No. 30.) Judge Gonzalez then directed that SET's response to the motion be filed on or before December 10, 2025. (Electronic Order dated November 17, 2025; *see* ECF No. 43-8.) Chase served its motion and the November 17 Order upon SET by U.S. first class mail, FedEx overnight mail, and email, none of which were returned as undeliverable. (*See*

ECF No. 31; *see also* ECF No. 43-9) Neither SET nor Solano contacted the Court in connection with Chase's motion or Chase's subpoena *duces tecum*. (*See* ECF No. 43, Turcotte Decl. at ¶ 13.) As such, counsel for Chase filed a letter once again seeking that SET be held in contempt, that SET be directed to provide true and accurate responses to the subpoena by a date certain, and that Chase be awarded costs and expenses. (*See id.* at ¶ 14.)

On December 30, 2025, Judge Gonzalez determined that Chase made out a "prima facie case for civil contempt" and held SET in contempt ("December 2025 Order"). Specifically, Judge Gonzalez found that the subpoena was a clear and unambiguous court order, SET's noncompliance was "clear and convincing," and "SET has not made any diligent attempts to bring itself into compliance with the subpoena." (*Id.*) Consequently, SET was directed to provide "true and correct responses to the subpoena by January 9, 2026." (*Id.*) Lastly, though Judge Gonzalez noted that imposing costs and expenses was inappropriate at that juncture, he forewarned SET that its failure to comply with the subpoena by January 9, 2026 would result in the Court setting a hearing to determine sanctions. (*Id.*) Chase served the December 2025 Order upon SET and Solano on December 30, 2025 by U.S. first class mail, FedEx overnight mail, and email. (*See* ECF No. 33; *see also* ECF No. 43, Turcotte Decl. at ¶ 16.)

On January 16, 2026, according to Chase, Plaintiff sat for deposition and testified that he is presently working for SET and Solano as a 1099 independent contractor beginning either "at the end of 2023 or the beginning of 2024" and worked continuously for SET until his Vehicle was repossessed on January 21, 2025. (ECF No. 43, Turcotte Decl. at ¶ 17 (quoting ECF No. 43-11, Guadalupe Dep. Tr. at 11:19-25, 21:7-12) (cleaned up)). Moreover, Plaintiff testified that Solano is his "boss" and he has always reported to Solano. (*Id.* (citing ECF No. 43-11, Guadalupe Dep. Tr. at 18:22-23, 25:12-17)). Despite seeing Solano four to five times each week

and working in the same warehouse as him, Plaintiff testified that Solano has never discussed Chase's subpoena or this Court's orders with him and that Plaintiff was unaware that Chase subpoenaed his employment records from SET or Solano. (*Id.* at ¶¶ 18-19 (citing ECF No. 43-11, Guadalupe Dep. Tr. at 37:12-38:5, 38:14-39:13, 42:23-43:10)).

During his examination, Plaintiff shared the current cell phone number of Solano. (*Id.* at ¶ 20 (citing ECF No. 43-11, Guadalupe Dep. Tr. at 51:11-52:2)). On January 20, 2025, counsel for Chase called and spoke with Solano during which conversation Solano "acknowledged that he received the undersigned's emails, including the one attaching this Court's December 30, 2025 contempt order," "apologized for his being unresponsive explaining that he was dealing with protracted marital problems," and "assured the undersigned that he would provide documents responsive to the [] subpoena within a day or two." (ECF No. 43, Turcotte Decl. at ¶ 21.) According to Chase, and despite additional phone calls made on January 23, 2026, Solano has not responded. (*Id.* at ¶ 22.)

Shortly thereafter, on January 26, 2026, following SET's non-compliance with the subpoena *duces tecum*, Chase "request[ed] that the Court schedule a hearing to determine appropriate sanctions." (ECF No. 35 at p. 3.) On February 2, 2026, Judge Gonzalez referred the case to the undersigned "for all pretrial matters" including Defendants' motion (Electronic Order, 02/02/2026) for a hearing to determine sanctions for SET's contempt. The next day, the Court directed that any opposition to Chase's motion be filed by February 6, 2026 and that the parties appear on Chase's motion on February 18, 2026. (Electronic Order dated February 3, 2026.)[2] To date, no opposition to Chase's motion has been filed. On February 13, 2026, the

---

[2] Counsel for Chase served a copy of this Court's February 3, 2026 Scheduling Order upon SET and Solano on February 13, 2026 via U.S. first class mail, FedEx overnight mail, and email. (ECF No. 41.)

Court clarified that the parties appear for a *hearing* on February 18, 2026, not simply argument, and that the parties submit on ECF any documentary evidence and a list of any witnesses and/or exhibits to be utilized during the hearing.[3] Chase submitted its Exhibits (ECF No. 43) and Exhibit List (ECF No. 44) on February 17, 2026. The Court held the sanctions hearing on February 18, 2026.  Neither Solano nor anyone from SET appeared at the hearing.

## **LEGAL CONTEXT**

"'[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt, and thus can sanction an individual or entity that fails to comply with the court's discovery orders when certain conditions are met.'" *Leser v. U.S. Bank Nat. Ass'n*, No. 09-CV-2362 (KAM)(ALC), 2011 WL 1004708, at *6 (E.D.N.Y. Mar. 18, 2011) (quoting *In re Martin–Trigona,* 732 F.2d 170, 173 (2d Cir. 1984)). Pursuant to 18 U.S.C. § 401(3), a court is empowered to enforce compliance with its orders through civil contempt. *Id.* at *1, n.1. Specifically, "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as ... (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401.

"After finding Defendants in civil contempt, the question then shifts to what sanctions are appropriate." *Kosowski v. Nassau County*, 350 F.R.D. 346, 354 (E.D.N.Y. 2025); *Rodriguez v. New Generation Hardware Store Corp.*, No. 22-cv-4422 (LJL), 2024 WL 1406953, at *1 (S.D.N.Y. Apr. 2, 2024). "Unlike criminal contempt sanctions, civil contempt sanctions are not punitive." *Rodriguez*, 2024 WL 1406953, at *1 (citing *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 469 (2d Cir. 1958)). Civil contempt sanctions are intended to secure future compliance with court orders (a "coercive sanction") and to compensate the party that has been

---

[3] Counsel for Chase served a copy of this Court's February 13, 2026 Electronic Order upon SET and Solano on February 16, 2026 via U.S. first class mail, FedEx overnight mail, and email. (ECF No. 42.)

wronged (a "compensatory sanction"). *Leser*, 2011 WL 1004708, at *10 (citing *Paramedics*

*Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir.

2004)). "Importantly, in selecting contempt sanctions, a court is obliged to use the 'least possible

power adequate to the end proposed.'" *Leser*, 2011 WL 1004708, at *11 (quoting *Shillitani v.*

*United States,* 384 U.S. 364, 371 (1966)).

"A subpoenaed person found to be in contempt could be subject to sanctions, including

imposition of a fine, attorneys fees and costs. If the failure to comply continues, the Court could

issue a warrant of arrest." *Freund v. Weinstein*, No. 08cv1469 (FB) (MDG), 2009 WL 4065585,

at *1 (E.D.N.Y. Nov. 23, 2009); *see Ametek, Inc. v. North Shore Int'l Inc.*, No. 16-cv-2258 (SJF)

(ARL), 2017 WL 3172821, at *3 (E.D.N.Y. July 26, 2017) (holding the subpoena party in

contempt and noting that his failure to comply with the subpoena within ten days from service of

the contempt order upon him, sanctions for "his continued contempt, including but not limited to,

posting a security in a sum sufficient to assure his compliance or being incarcerated until he

complies with the subpoena" would ensue); *see Mauro v. Countrywide Home Loans, Inc.*, No.

CV 07-1268 (JFB) (WDW), 2009 WL 3463570, at *3 (E.D.N.Y. Oct. 21, 2009) (determining

that if the non-party continued failing to appear for depositions pursuant to valid subpoenas, the

court would find the non-party in contempt, impose sanctions in the form of attorneys' fees and

costs, and then "issue a warrant of arrest for failure to comply with a court order" if the failure to

comply continued).

Monetary sanctions can be "both compensatory and coercive in nature." *Leser*, 2011 WL

1004708, at *12 (citing *Paramedics*, 369 F.3d at 658). "If fines are coercive in nature, that is, if

they are imposed to secure future compliance with court orders, the court has 'broad discretion to

design a remedy that will bring about [such] compliance.'" *Id.* at *11 (quoting *Paramedics*, 369

F.3d at 657 (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982))).

"The Second Circuit has counseled that when imposing penalties for a coercive purpose, the

district court should consider several factors including: (1) the character and magnitude of the

harm threatened by the party's continued noncompliance; (2) the efficacy of the sanction in

bringing about compliance; and (3) the contemnor's ability to pay." *Id.* (quoting *Paramedics*, 369

F.3d at 658 (citing *Perfect Fit,* 673 F.2d. at 57)). The contemnor bears the burden of proving a

financial inability to pay and must establish an inability to pay "clearly, plainly, and

unmistakably." *Dell Inc. v. Compudirect, Inc.*, 316 Fed. App'x 32, 34 (2d Cir. 2009).

On the other hand, "the district court may award appropriate attorney fees and costs to a

victim of contempt" as a compensatory sanctions award. *Leser*, 2011 WL 1004708, at *12 (citing

*Weitzman*, 98 F.3d at 719); *Casale v. Kelly*, 710 F. Supp. 2d 347, 367 (S.D.N.Y. 2010) ("A court

may award appropriate attorney fees and costs to a victim of contempt.") (quotation marks

omitted); *see Ametek, Inc. v. North Shore Int'l Inc.*, No. 16-cv-2258 (SJF) (ARL), 2017 WL

3172821, at *3 (E.D.N.Y. July 26, 2017) (awarding "reasonable attorneys' fees, caused by [the]

contempt of the . . . subpoena, with such amount being determined by the Court"). "'Since the

plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to

award the reasonable costs of prosecuting the contempt, including attorneys' fees, if the violation

of the decree is found to have been willful.'" *Broker Genius Inc. v. Seat Scouts LLC*, No. 17-CV-

8627 (SHS), 2019 WL 2462333, at *3 (S.D.N.Y. June 13, 2019) (quoting *Vuitton et Fils S.A. v.

Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979)). "In order to establish willful contempt, it

must be shown that the 'contemnor had actual notice of the court's order, was able to comply

with it, did not seek to have it modified, and did not make a good faith effort to comply.'"

*Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HBP), 2006 WL 2266312, at *18 (S.D.N.Y. Aug. 4,

9

2006) (quoting *New York State Nat'l Org. for Women v. Terry,* 952 F. Supp. 1033, 1043 (S.D.N.Y. 1997) ("It is well settled in this Circuit that costs, including reasonable attorney's fees, may be awarded to the party who prosecutes a contempt motion as an appropriate compensatory sanction for contumacious behavior"), *aff'd,* 159 F.3d 86 (2d Cir. 1998))). The party seeking damages has the burden of proof as to those damages. *Cordius Trust v. Kummerfeld Assoc., Inc.,* 658 F.Supp.2d 512, 524–25 (S.D.N.Y. 2009).

For example, in *Leser* District Judge Kiyo A. Matsumoto determined that daily fines of $500 per day was an appropriate coercive monetary sanction following the non-party witness's failure to comply with defendant's document subpoena. *Leser*, 2011 WL 1004708, at *1, 11. In doing so, the Hon. Kiyo A. Matsumoto found that the non-party's "noncompliance has lasted at least six months and has significantly delayed the course of discovery," because the non-party was a "key witness" and the parties have been "unable to continue discovery without [the non-party's] compliance with this Court's Orders and the subpoena." *Id.* at *11. Second, the court deemed monetary fines "necessary" to secure the non-party's compliance because despite "being explicitly warned" that a continued non-compliance would result in monetary sanctions, the non-party "ha[d] not produced the required documents" or "appear[ed] at the [] Show Cause hearing." *Id.* Lastly, the non-party never raised that he was financially unable to pay such a fine. *See id.* As such, the court imposed a monetary sanction of $500 per day for each day of the non-party's continued noncompliance beginning a week after the court's decision, labelling this sanction "a coercive measure imposed in order to obtain [the non-party's] compliance with the subpoena and this Court's Orders." *Id.* at *12. The Court also imposed a sanction of reasonable attorneys' fees and costs after determinizing that the non-party "willfully and intentionally flouted this Court's Orders and accordingly award[ed] attorney's fees and costs to [defendant]."

10

*Id.* at *13. In doing so, the court found that the non-party had actual notice of the court's orders, evaded compliance with the subpoena, and never attempted to comply with the court's orders or contact the court or defendant "at any time." *Id.* Accordingly, the proof of the non-party's willful noncompliance was "clear and convincing" to justify an award of attorneys' fees and costs to defendant incurred in bringing the motion for contempt. *Id.*

Similarly, in *Rodriguez*, the court concluded that a monetary sanction in the amount of $500 per day was "sufficient but not greater than necessary to compel compliance" following the court's finding of civil contempt against defendant for failing to comply with plaintiff's information subpoena. 2024 WL 1406953, at *1-2. In doing so, the Hon. Lewis J. Liman "[took] into account that defendant [] has been in non-compliance" for roughly two months from when the court ordered compliance with the information subpoena but also considered that "this is the first order of contempt" imposed against the defendant. *Id.* at *2. Additionally, the monetary sanction was necessary to secure compliance because despite multiple attempts to secure compliance, defendant did not contest the motion for contempt, oppose the award of sanctions, or even argue that it was financially unable to pay the sanction. *See id.*

Here, like in *Leser*, SET's period of noncompliance has spanned nearly seven months since Chase's subpoena was served on July 23, 2025 and has persisted, like in *Rodriguez*, for nearly two months since Judge Gonzalez's finding of clear contempt and directive that documents be produced. (*See* ECF No. 30-1; *see also* December 30 Order). Moreover, like the non-party in *Leser*, SET is undoubtedly a "key witness" in this action considering SET possesses employment and payroll records which bear directly on Plaintiff's request for $39,600.00 in lost wages resulting from the repossession of the Vehicle. (*See* ECF No. 43-14; ECF No. 28, Ex. B; ECF No. 39.) Consequently, because SET has continuously failed to comply with the Chase

11

subpoena, the parties have been stymied in their discovery efforts, so much so that the fact discovery deadline needed to be extended from January 16, 2026 until March 31, 2026. (*See* ECF No. 34 at p. 3 (defendants seeking extension to allow them the "opportunity to obtain Plaintiff's employment and payment records in advance of taking his deposition")). Indeed, according to Chase, Plaintiff's deposition was hindered because of SET's non-compliance with the subpoena *duces tecum* as Plaintiff testified solely as to estimated lost wages "based on virtually no documentary support". (ECF No. 35 at p. 3; *see* ECF No. 43, Turcotte Decl. at ¶ 25 ("[I]n the absence of Plaintiff being able to identify his specific periods of employment with SET . . . it is not possible to truly gauge the extent to which his lost wages claim is inflated absent SET producing the employment and payroll records set forth in Chase's subpoena.")).

Notwithstanding Judge Gonzalez's warning to SET that sanctions would be imposed if SET continued its non-compliant conduct, neither SET nor Solano has complied with the subpoena. (*See* Electronic Order dated December 30, 2025 ("[T]he Court warns SET that if it fails to comply with the subpoena by January 9, the Court will schedule this matter for a hearing to determine sanctions" and noting that "SET has not sought to quash the subpoena or even file a response to this motion for contempt")). In addition, at no point has SET or Solano attempted to contact the Court regarding the subpoena, seek modification of the subpoena, oppose Chase's motion for contempt or Chase's current application for sanctions, or even explain the extended period of non-compliance. Similarly, neither SET nor Solano appeared for the sanctions hearing on February 18, 2026. Lastly, as in *Rodriguez*, neither SET nor Solano has indicated any financial inability to pay, let alone doing so "clearly, plainly, and unmistakably."

Accordingly, the Court finds that monetary sanctions of $500 per day to be an appropriate coercive sanction. SET is afforded <u>one last opportunity</u> to comply with Chase's July

12

23, 2025 subpoena *duces tecum* by February 25, 2026. SET is forewarned that failure to obey this Order and produce the documents demanded in the subpoena and ordered to be produced by Judge Gonzalez by February 25, 2026 will result in daily sanctions imposed in the form of $500 per day for each weekday it is non-compliant with this Court's Order starting on February 26, 2026 and to continue until SET fully complies with this directive. *See Lang v. Walmart*, No. 22-cv-02784 (JMW), 2025 WL 638589, at *5 (E.D.N.Y. Feb. 27, 2025); *Rodriguez*, 2024 WL 1406943, at *2 (directing that the $500 fine take effect on April 12, 2024—ten days after the court's order imposing sanctions if the noncompliance was not cured before then).

Like in *Leser*, reasonable attorneys' fees and costs are also appropriate. SET has been aware of Chase's subpoena since July of 2025 as demonstrated by Solano's correspondence with Chase on July 30, 2025 indicating he received the subpoena and sought clarification of the scope, yet has not responded to date. (*See* ECF No. 30-3 ("I have got a paperwork regarding information about Guadalupe, can you please let me know what is exactly what you need so I can gather everything I can send it to you"); 30-4; 30-5; 30-6.) Moreover, according to Chase, it had a "ten-minute phone call" with Solano on January 20, 2025 during which time Solano "acknowledged that he received [Chase's emails]" but failed to subsequently comply with the subpoena *duces tecum*. (ECF No. 35 at p. 3.) Despite this awareness, neither SET nor Solano has made any efforts to comply with Chase's subpoena. Accordingly, the Court finds that SET's noncompliance was willful to support an award of attorneys' fees and costs incurred in connection with its contempt motions.

In determining a "reasonable fee award" of compensatory sanctions following a finding of civil contempt, courts utilize the "lodestar" method. *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-00449 (HG) (LGD), 2023 WL 5806294, at *4 (E.D.N.Y. July 6, 2023) ("[C]ourts use

the lodestar method to determine attorneys' fee awards resulting from contempt."); *see Treyger v. First Class Furniture & Rugs Inc.*, No. 21-CV-2902, 2022 WL 18356256, at \*5-6 (E.D.N.Y. July 14, 2022) (using the lodestar method to determine attorneys' fees owed due to contempt), *report and recommendation adopted*, 2023 WL 199698 (E.D.N.Y. Jan. 17, 2023).

"A reasonable award reflects the result of the 'lodestar' analysis, i.e., the product of a reasonable hourly rate (which rate reflects the hourly rate in the District for similar cases) and the reasonable number of hours spent on the tasks for which expenses are sought." *Jackson v. Nassau County*, 602 F. Supp. 3d 352, 355–56 (E.D.N.Y. 2022). This presumptively reasonable fee is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks and citations omitted).

"The method for determining reasonable attorneys' fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases." *Scelsi v. Habberstad Motorsport Inc.*, No. 19-CV-4315 (FB), 2021 WL 6065768, at \*2 (E.D.N.Y. Dec. 22, 2021) (referencing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184, 186 n.3, 190 (2d Cir. 2008)). Once a reasonable hourly rate is determined, the Court must then "multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee." *Id.* (referencing *Arbor Hill*, 522 F.3d at 190). "Additionally, the party seeking expenses must support the award sought with the submission of contemporaneous time records reflecting

14

the hours for each professional, the date and number of hours each spent, and a description of the work performed." *Jackson v. Nassau County*, 602 F. Supp. 3d 352, 355–56 (E.D.N.Y. 2022).

Chase does not include any of this information in its application. Chase merely states that:

> [S]ince the time that SET failed to respond to Chase's subpoena on August 6, 2025 through the filing of this Declaration, Chase has expended approximately 16.5 hours in attorney time in connection with its efforts to enforce the SET subpoena, and seeks an award of attorney's fees and costs against SET incurred through the disposition of this matter.

(ECF No. 43, Turcotte Decl. at ¶ 27.)

Consequently, the Court directs that counsel for Chase submit, on or before March 4, 2026, contemporaneous time records detailing the matters worked on, the hourly rates charged by those billing for the motion for contempt, an affidavit as to the legal experience of those billing for the motion for contempt, and any other proof necessary for the Court to determine a "reasonable" fee.

Lastly, Chase posits that:

> [S]hould the Court find that SET and Plaintiff are working in concert to deprive Defendants of the employment and payroll records responsive to Chase's subpoena, and will not fully and truthfully respond to the subpoena by a date certain in the immediate future, Defendants submit Plaintiff should be precluded from introducing any evidence of lost wages in future motion practice or at trial.

(ECF No. 43, Turcotte Decl. at ¶ 28.)

Here, it is premature to determine that SET will not respond to the subpoena *duces tecum* by a date certain set by this Court. Moreover, the conduct of Plaintiff as Chase cites to is not before the Court, rather, it is determining the appropriate sanctions to be imposed upon SET following Judge Gonzalez's finding of contempt against SET. The potential preclusion of evidence from SET's non-compliance is for a separate application.

15

## CONCLUSION

For the foregoing reasons, the application to impose sanctions for civil contempt (ECF

No. 35) is granted as follows:

a. Monetary sanctions imposed on SET in the amount of $500 per day which shall begin to accrue on **March 2, 2026**, unless SET fully produces all responsive documents pursuant to Chase's subpoena served July 23, 2025, on or before **March 1, 2026**. Should SET fail to purge its contempt by March 1, 2026, Chase shall notify the Court on March 2, 2026 via ECF at which point the $500 per diem monetary sanctions shall begin to accrue and will continue to accrue until SET purges its contempt. SET shall deposit these funds with the Clerk of United States District Court for the Eastern District of New York, 100 Federal Plaza, Central Islip, NY 11722, and the funds will be held by the Clerk of the Court in interest until further Order of the Court; and

b. Reasonable attorneys' fees and costs assessed against SET for its willful disobedience of this Court's Orders. The Court directs that counsel for Chase file, on or before **March 9, 2026**, its supplemental submissions in order for the Court to determine the "reasonable" attorneys' fees and costs to be awarded to Chase. Opposition to the award of attorneys' fees and costs, if any, shall be filed on or before **March 16, 2026**; and

c. If SET does not fully purge its contempt by **March 23, 2026**, including payment of all monetary sanctions, Chase shall file a letter on ECF on **March 24, 2026**, advising the Court as to SET's noncompliance at which time, in addition to the continuing $500 per diem monetary sanction, the Court will issue an Order directing the United States Marshal to bring Solano, as an officer of SET who possesses the power to cause SET to comply with the subpoena, before the Court for incarceration. The incarceration and per diem monetary sanctions shall both continue until such time as SET purges its contempt.

Chase is directed to serve a copy of this Memorandum and Order upon SET and file

proof of service on ECF on or before **February 25, 2026**. Service shall be completed by (i)

personal service through a process server, (ii) by email to cjsolano1986@gmail.com, and (iii)

FedEx overnight mail and U.S. first class mail to 1172 Nugent Avenue, Bay Shore, NY 11706.

If SET fully complies with the subpoena *duces tecum*, Chase shall inform the Court via ECF.

Dated: Central Islip, New York
      February 19, 2026

**S O   O R D E R E D:**
/s/ *James M. Wicks*
    JAMES M. WICKS
   United States Magistrate Judge

16